## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JEFFREY WALDRON | : | CIVIL ACTION NO.: |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MASSACHUSETTS INSTITUTE OF | : | |
| TECHNOLOGY; MASSACHUSETTS | : | |
| INSTITUTE OF TECHNOLOGY LONG | : | |
| TERM DISABILITY PLAN; | : | |
| MASSACHUSETTS INSTITUTE OF | : | |
| TECHNOLOGY BASIC RETIREMENT | : | |
| PLAN, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| _____ | : | |

## COMPLAINT

Plaintiff Jeffrey Waldron ("Waldron") alleges as follows:

## JURISDICTION

1.      Waldron's claims for relief arise under the Employee Retirement Income Security

Act of 1974, as amended ("ERISA"), 29 U.S.C. section 1132(a)(1) and (3).  Pursuant to 29

U.S.C. section 1331, this court has jurisdiction over this action because this action arises under

the laws of the United States of America.  29 U.S.C. section 1132(e)(1) provides for federal

district court jurisdiction of this action.

## VENUE/INTRADISTRICT ASSIGNMENT

2.      Venue is proper in the District of Massachusetts in that Waldron is and was a

resident of the town of Granby, in the county of Hampshire, and in the state of Massachusetts,

when Defendant terminated Waldron's long-term disability benefits.  Therefore, 29 U.S.C.

section 1132(e)(2) provides for venue in this court.  Intradistrict venue is proper in the

Springfield Division because Waldron is a resident of Hampshire county.

## PARTIES

3.      Waldron  is, and at all times relevant hereto was, a participant, as that term is

defined by 29 U.S.C. section 1000(7), of both the MIT Long Term Disability Plan ("The LTD

Plan") and the Massachusetts Institute of Technology Basic Retirement Plan and thereby entitled

to receive benefits therefrom.  Waldron was and is a participant because he was an employee of

Massachusetts Institute of Technology ("MIT"), which established the plans.

4.      Defendant MIT established the plans and is an institution organized under the

laws of Massachusetts and doing business in the State of Massachusetts.  Defendant MIT is the

plan administrator of The LTD Plan and the Basic Retirement Plan.

5.      Defendant The LTD Plan is an employee welfare benefit plan organized and

operating under the provisions of ERISA, 29 U.S.C. section 1001 et seq.  The LTD Plan was

created by a written instrument, but Waldron does not have a copy of that written instrument.

6.      Defendant the MIT Basic Retirement Plan is the plan providing retirement

benefits.

## FIRST CLAIM FOR RELIEF
### (For Reinstatement of LTD Benefits)

7.      The LTD Plan is a self-insured plan that, at the onset of Waldron's claim, was

administered by Liberty Life Assurance Company of Boston.

8.      Prudential Insurance Company of America ("Prudential) became the claims

administrator of The LTD Plan effective January 1, 2009, but MIT directly administered

Waldron's claim from January 1, 2009, until sometime in late in 2016.

2

9.      Prudential is a corporation organized under the laws of the State of New Jersey,

doing business in the State of Massachusetts and the designated as Claims Administrator for

Defendant, The LTD Plan.

10.     The LTD Plan provides long term disability ("LTD") benefits after an elimination

period, for a which a person under the age of 60 at the time the disability occurred, as was

Waldron, such benefits potentially could continue until age 67.

11.     Waldron was formerly employed by MIT.

12.     Waldron became disabled effective August 16, 1998.

13.     Waldron applied for and was granted LTD disability by The LTD Plan, and was

so informed by letter dated March 5, 1999, with benefits effective February 17, 1999, after the

conclusion of The LTD Plan's six month waiting period.  A true and correct copy of that letter is

attached hereto as Exhibit "1."  Pursuant to The LTD Plan, Waldron was awarded: (a) a monthly

basic LTD benefit; (b) payment by MIT of the entire cost of Waldron's health and dental

insurance; (c) basic and supplemental life insurance coverage paid for by MIT; (d) continued

contributions to Waldron's retirement plan; and (e) continued contributions to Waldron's

supplemental 401(k) savings plan.

14.     Waldron was granted Social Security Disability benefits in 1999, the initial

amount of which reduces his monthly basic LTD benefit.

15.     According to notes made by Prudential employees in its file regarding Waldron's

claim:

        A.      In 2009, when Prudential became claims administrator for MIT, MIT

        withheld 29 individuals' claims, including Waldron's, from Prudential's administration

        because MIT had accepted that those individuals would remain disabled through the

exhaustion of their eligibility due to aging and MIT felt those claims there was little chance "of recovery" and that those claims would not require active management.

B.      In 2012, MIT sent those 29 files to Prudential for administration. However, Prudential did not take over the administration of those claims at that time.

C.      In September, 2016, Prudential agreed to take over the administration of the 20 remaining claims of the original 29 claims, the other nine claims apparently having ended because those claimants reached the maximum age to receive their benefits.

16.     By letter dated October 18, 2016, Prudential wrote Waldron notifying him that it was taking over the administration of his LTD claim.  Handwritten on the lower left corner of Prudential's file copy of the letter is a notation of the date Waldron's LTD claim would end (on Waldron's 67th birthday).

17.     On January 23, 2017, Prudential requested medical records regarding Waldron and thereafter conducted a Capacity/Clinical review regarding Waldron's claim.   Additional Capacity/Clinical reviews were thereafter conducted on:  July 19, 2017, September 6, 2017, October 4, 2017, November 9, 2018, January 28, 2019, and February 6, 2019.

18.     On March 8, 2019, Prudential's Dr. Kevin Hayes performed a "file review" of Prudential's records regarding Waldron's claim.

19.     By letters dated March 11, 2019, Prudential wrote Waldron's treating doctors, Drs. Marsters and Brandt, asking them if they agreed with Dr. Hayes' assessment of Waldron.

A.      Dr.  Marsters responded to Dr. Hayes' letter that she did not agree with his opinion and provided a narrative report explaining her opinion in greater detail.

B.      Dr. Brandt also disagreed and provided a three-and-a-half page narrative report explaining Waldron's ongoing disabling condition.

20.     By letter dated March 27, 2019, Prudential, on behalf of The LTD Plan terminated Waldron's LTD benefits, effective April 1, 2019.  The letter informed Waldron that he could appeal the decisions and had 180 days to do so.

21.     By letter dated March 28, 2019, MIT's Elliott Richman notified Waldron that since Prudential had determined that Waldron was not entitled to LTD benefits, "all Long Term benefits will be terminated/cease."  Richman also advised Waldron to "contact MIT's Retirement Counselor . . . to schedule an appointment to discuss your retirement options as soon as possible."

22.     Because Waldron's LTD benefits were terminated, he lost all benefits had been provided under The LTD Plan, including medical and dental insurance until then provided at no cost to him for himself and his wife.  Since Waldron could not afford to replace the medical and dental insurance on his limited and reduced income, he applied for and subsequently received retirement under the MIT Basic Retirement Plan, which provides partially subsidized medical and dental insurance coverage for himself and his wife and $50,000.00, life insurance benefits.

23.     As a result of MIT's termination of his LTD benefits, Waldron retained counsel.

24.     In a series of letters beginning April 1, 2019, from Waldron's counsel to both MIT and Prudential, Waldron's counsel requested that MIT and Prudential provide to him for use in Waldron's appeal, the governing plan documents, Waldron's claim file, and other documents relevant to Waldron's claim.

The Governing Plan Documents

25.     Waldron does not have and was not provided the applicable LTD plan document.

26.     MIT and/or Prudential provided the following plan documents:

A.      By letter dated April 16, 2019, Elliott Richman of MIT provided the plan, as amended and restated, effective January 1, 2000, a true and correct copy of which is attached hereto as Exhibit "2" and an SPD with a cover date of July 1, 2009, a true and correct copy of which is attached hereto Exhibit "3."

B.      By letter dated May 7, 2019, Elliott Richman of MIT provided MIT's Administrative Services Agreement with Prudential, except Exhibit C thereto, which he later provided, a true and correct copy of which (including Exhibit C thereto, but not including copies of Exhibits "2"" and "3" which were attached thereto), is attached hereto as Exhibit "4."

C.      By letter dated May 20, 2019, Elliott Richman of MIT provided "The Summary Plan Description ("SPD"), effective July 1, 1998," for The LTD Plan, a true and correct copy of which is attached hereto as Exhibit "5."  By letter dated August 8, 2019, Tonya Gill of Prudential provided the same document, writing that it provides "the definition of disability" applicable to Waldron's claim.

D.      Also by letter dated August 8, 2019, Prudential's Tonya Gill provided Prudential's "Group Disability Memorandum-2015," dated March 15, 2015, a true and correct copy of which is attached hereto as Exhibit "6."

E.      By letter dated October 21, 2019, Elliott Richman of MIT provided MIT's Long-Term Disability Plan, effective July 1, 2019, a true and correct copy of which is attached hereto as Exhibit "7." In his letter, Mr. Richman wrote that that document contains information about the LTD appeals process regarding Waldron's voluntary second appeal.

27.     Exhibit "2" is the SPD in effect in 1998, when Waldron became disabled, and in January, 1999, when Waldron applied for LTD benefits, but states, "The actual terms of the Plan are stated in the plan document . . ." (Exhibit "2", page 3.)  It does not describe any reservation of discretion to MIT.

28.     Exhibit "3" is the Plan document as amended and restated effective January 1, 2000 - - after Waldron became disabled and after he began received benefits.  It states, on page 1, that it applies to any claim for disability commencing on or after January 1, 2000, and that claims for disability prior to January 1, 2000, shall be governed by the provisions of the applicable disability plan . . . in effect at the time such claimed disability commenced."  Thus, it does not apply to Waldron's claim.  It reserves "full discretionary authority," to MIT (Page 12, §10.6) and specifies review of denied claims by a committee.  (Pages 11-12, §10.5.)

29.     Exhibit "3" is the SPD in effect on July 1, 2009.  It provides, in part:

A.     Provides a definition of "**Totally Disabled**" on page 6 that is substantially the same as that in Exhibit "2," pages 3-4, but different from that set forth in Exhibit "5" at page 5 or in Exhibit "1" from the definition summarized.

B.     Describes, on page 9, the same benefits awarded to Waldron, as described in Exhibit "1."

C.     States MIT, as plan administrator, "has complete discretionary authority." (Page 10.)

D.     Provides for a single appeal if benefits are denied (Page 10), but does not mention any "committee."

30.     Exhibit "4" provides, in part, that Prudential will provide specified services as to claim determinations and appeals, but that MIT will decide all appeals.  (Exhibit "B", thereof, ¶

7

1.C. & 1.E.)  Exhibit "4" also provides, in Exhibit "B" thereof, that Prudential will utilize

specified "duration guidelines," its "clinical best practice protocols, and its vocational . . . best

practice protocols."

31.     Exhibit "6" is a Prudential memorandum regarding ERISA claims which

provides, in part, that Prudential provides two appeals post-denial of benefits, one mandatory,

one voluntary.

32.     Exhibit "7" revises Exhibit 3":

A.     It states it applies only to claims for disability commencing after July 1,

2019 (Page 1), and thus does not apply to Waldron's claim.

B.     It is different from Exhibit "2" in several material respects, primarily by:

(1) eliminating the "Committee;" and (2) restructuring the appeal process to mimic the

appeal process set forth in Exhibit "6."  (*See* §§ 10 and 11, thereof, at pages 10-15.)

C.     States the "Claims Administrator will review and decide appeals."

33.     As alleged herein, MIT, the plan administrator, provided different SPDs to

Waldron, Exhibits "3" and "5".

A.     No SPD which MIT provided to Waldron complies with the requirements

of 29 U.S.C. § 1022 or 29 CFR § 2520.102-3 because none:  accurately reflects the

contents of the plan; accurately describes the type of administration of the plan;

accurately and clearly identifies circumstances which may result in disqualification,

ineligibility, or denial or loss of benefits that a participant might reasonably expect;

accurately describes the procedures governing claims for benefits or the procedures

required by ERISA §503, 29 U.S.C. §1133, for the redress of claims which are denied in

whole or in part.

B.      Specifically, regarding the SPDs and other plan documents MIT provided

to him, Waldron is informed and believes that:

i.      Exhibit "5" accurately sets for the contents of the Plan and the

benefits to which Waldron is entitled, but does not accurately describe the type of

administration of the Plan or the procedures governing claims for benefits or the

procedures required by 29 U.S.C. §1133.

ii.      Exhibits "2" and "3" do not accurately describe the contents of the

Plan, or the benefits to which Waldron is entitled, or the circumstances which

may result in ineligibility, etc., the type of administration of the Plan, or the

procedures required by 29 U.S.C. §1133.

iii.      Exhibits "5" and "7" partially describe the procedures required by

29 U.S.C. §1133.  However, contrary to a permissive option of 29 CFR

§2520.103-3(s).  Exhibit "5" was not provided to Waldron as a separate document

which accompanied the SPD.  Furthermore, Exhibits "5" and "7" do not

accurately describe the procedures required by 29 U.S.C. §1133 because they do

not accurately describe or identify the party who decides such "appeals."  Exhibits

"5" and "7" identify Prudential as the final decision-maker on all appeals, when,

in fact, Prudential merely recommended such decisions and Elliott Richman of

MIT made the final decision on both of Waldron's appeals.

34.      Waldron is informed and believes, and thereon alleges, that despite his counsel's

several requests that MIT provide him with "other instruments under which the plan is

established or operated," MIT did not do so, in violation of 29 U.S.C. § 1024(b)(4).  Specifically,

Waldron is informed and believes:

A.      Based on Prudential's and MIT's Administrative Services Agreement, Exhibit "4" hereto, and reliance in general on the procedures set forth in Exhibit "6" hereto, that other Prudential "group disability memoranda" are other instruments under which The LTD Plan is operated.

B.      Based on Prudential's and MIT's Administrative Services Agreement, Exhibit "4" hereto, that Prudential's medical and vocational best practices protocols are other instruments under which The LTD Plan is operated.

C.      Based on *Cowern v Prudential Insurance Company of America*, 130 F. Supp. 3d 443, 448 and note 4 (D. Mass. 2013), that Prudential has "internal guidelines " which it provides to its "LTD Teams" that evaluate claims for LTD benefits, which are either other instruments under which The LTD Plan is operated or documents which Prudential relied upon to decide Waldron's claim and make recommendations regarding Waldron's appeals and thus should be included in the Administrative Record of Waldron's claim and should have been provided to Waldron's counsel on his request for use in Waldron's appeals.

<u>Waldron's Claim File</u>

35.     There was nothing in Waldron's claim file, as maintained and provided by Prudential to Waldron, from the onset of the claim in 1998 through 2016.

36.     As exhibits to his first appeal, Waldron provided certain limited documents which he had regarding his claim for the period from 1999 - 2016.

37.     MIT provided certain documents it maintained regarding Waldron's claim.

38.     MIT represented that it requested that Liberty provide to it other documents regarding Waldron's claim, but Waldron is informed and believes that Liberty never did so.

39.     Waldron, through his counsel, requested that MIT and/or Prudential provide copies of other specified documents which Waldron is informed and believes are properly part of Waldron's claim file or relevant to his claim, but MIT and Prudential both refused to do so.

Waldron's First Appeal

40.     By letter dated July 2, 2019, through counsel, Waldron timely appealed the termination of his LTD benefits.  In that appeal, Waldron requested that MIT reinstate all of his LTD benefits and retroactively terminate his request for early retirement upon granting his LTD appeal.  Also as part of the appeal, Waldron submitted a detailed declaration.

41.     Prudential required Waldron to attend an Independent Medical Examination ("IME") on August 12, 2019, by Dr. James Slayton and obtained a report dated August 20, 2019, from Dr. Slayton of that examination.

42.     As part of its review of Waldron's first appeal Prudential obtained a vocational review by Lindsay Neumann, dated August 26, 2019.

43.     By letter dated August 28, 2019, Prudential denied Waldron's first appeal, but invited Waldron to submit a second voluntary appeal.  By e-mail dated August 28, 2019, MIT's Elliott Richman replied to Prudential's Tonya Gill's e-mail regarding Prudential's recommendation, stating, in part, "Given Prudential's review of Jeffrey Waldron's Appeal, MIT will abide by the decision Prudential has recommended, as Prudential is the Claims Administrator for MIT."

Waldron's Second Appeal

44.     By letter dated October 3, 2019, Waldron timely submitted his second appeal.

45.     Prudential obtained a records review dated November 1, 2019, from R3 Continuum, signed by Victoria Zvonkina, M.D.

46.     By letter dated November 8, 2019, Prudential denied Waldron's second voluntary

appeal.  By e-mail dated November 6, 2019, MIT's Elliott Richman replied to Prudential's

Tonya Gill's e-mail regarding Prudential's recommendation, stating, in part, "Given Prudential's

review of Jeffrey Waldron's Appeal, MIT will abide by the decision Prudential has

recommended, as Prudential is the Claims Administrator for MIT."

Claims and Relief Sought

47.     At all times mentioned herein Plaintiff was, and continues to be totally disabled

under The LTD Plan's definition of totally disabled, as described in Exhibits "1" and "2."

48.     Waldron performed all conditions and conditions precedent known to him or

specified in any materials MIT and/or Prudential provided to him.  If there are other conditions

precedent specified in the plan document which Waldron did not perform, his performance of

such conditions was excused because MIT did not provide him the plan document and neither

MIT nor Prudential informed him any such additional conditions or conditions precedent.

49.     Waldron is informed and believes, and thereon alleges, that review of his claim

for benefits is *de novo*.  The bases for Waldron's information and belief are:

A.     Waldron does not have a copy of the plan document despite his counsel's

requests for it.

B.     As alleged in Paragraph 26 both MIT and Prudential separately provided

to Waldron a copy of the SPD in effect shortly before Waldron became disabled.

C.     Waldron, through counsel, requested several times that MIT provide to

him all governing plan documents.

D.     Waldron is neither aware of nor has been provided by MIT any plan

document applicable to his claim which: (i) reserves discretionary authority to MIT; (ii)

authorizes MIT to delegate any discretionary authority it possesses; (iii) delegates to or designates: (a) Prudential as the entity or person to decide or terminate claims; or (b) Elliott Richman as the person to decide "administrative appeals."

E.     The plan documents provided by MIT in response to Waldron's counsel's requests for governing plan documents, which reserve discretion to MIT and authorize delegation of that discretion, explicitly state that they do not apply to claims based on disabilities beginning in 1998, (i.e., to claims made prior to specified dates) and thus do not apply to Waldron's claim.

50.     If discretion is reserved in the plan document to MIT and if the plan document authorizes the delegation of that discretion to or designation of Elliott Richman to exercise that discretion, then review should be with limited or no deference because:

A.     MIT both pays and decides claims, and thus has a conflict of interest and by virtue of terminating Waldron's LTD benefits, MIT saved substantial sums of money.

B.     MIT did not provide Waldron a full and fair review of the termination of his LTD benefits, as required by 29 U.S.C. §1133, and does not have or did not follow procedures designed to do so.

C.     MIT lost, destroyed, and/or failed to maintain records from Waldron's claim file developed, obtained and/or created between the inception of Waldron's claim through January 1, 2009.

D.     Prudential, which made the decision of March 27, 2019, to terminate Waldron's benefits, did so without discretion to do so.

E.      Although both Prudential and MIT had the SPD, Exhibit "5,"
hereto, which describes the standards for LTD benefits and definition of disabled,
under The LTD Plan, both referred to the definition of disabled under the plan
effective in 2000, from Exhibits "2" and "3," hereto in the benefits decision letters
dated March 27, 2019, August 28, 2019, and November 8, 2019.  Therefore,
Waldron is informed and believes, and thereon alleges, that Prudential and MIT
used and followed the standards and criteria in the wrong plan to evaluate and
determine Waldron's claim for continued benefits.

F.      MIT and Prudential failed and refused to provide to Waldron all
documents as required by 29 U.S.C. § 1024(b)(4).

G.      Prudential and thus MIT have rules, procedures, and practices
regarding the administration of claims in general and Waldron's claim in
particular, which are generally specified in their Administrative Services
Agreement.  Exhibit "4," hereto, but which were not disclosed or provided to
Waldron, despite his counsel's requests for them.

H.      Prudential and MIT followed claims and appeal procedure that
were not disclosed to Waldron or set forth in any written document provided to
Waldron.

I.      Waldron is informed and believes and thereon alleges that
Prudential and MIT targeted Waldron's benefits for termination in order to reduce
costs and expenses of The LTD Plan.

51.     The reports and opinions obtained by Prudential from Drs. Hayes, Slayton, and Zvonkina, do not, jointly or severally, constitute substantial, credible or persuasive evidence to support the termination of Waldron's LTD benefits.

52.     Prudential's August 26, 2019, in-house vocational review from its employee, Lindsay Neuman, who identifies herself as a "Vocational Forensic Specialist" and as a "CRC," is knowingly unethical and dishonest, and unsupported by the facts:

      A.     Neumann considered only Dr. Slayton's report, she did not review or consider the opinions of Waldron's treating physicians.

      B.     Neumann provided no supporting documents for her opinions.

      C.     Neumann utilizes "1st year median wages for Springfield, MA" for five occupations without providing any evidence to support the conclusion that Waldron could earn the median wage in an entry level job.  Waldron has not worked for 20 years.  Even if he was capable of working on a full time basis, no employer will hire him and pay him the median wage, regardless of the job for which he is hired.  Waldron has no transferable skills and no skills.  He would be offered the bottom wage, because he is not qualified for anything greater than that.

      D.     The five occupations identified are either SVP (Specific Vocational Preparation) of 2 or 3, which means they require <u>training</u> before Waldron could begin working; that is Waldron is <u>not</u> "reasonably fitted by education, training or experience" to perform <u>any</u> of these occupations. If Prudential and MIT had meant any occupation he would be qualified for, or <u>could become qualified for</u>, it could have written it into the terms of the Plan.

E.      Prudential commonly issues group long term disability policies which define disability after receipt of 24 months of benefits in part, as "unable to perform duties of any gainful occupation for which you are reasonably fitted by education, training, or experience" and which define "gainful occupation," including self-employment, that is or can be expected to provide you with an income within 12 months of your return to work that exceeds [a specified level]." It appears that Neumann and Prudential interpret, or Prudential has standards or protocols which instruct its vocational personnel to apply the language of The LTD Plan as if it means that the claimant is reasonably fitted to perform a job and that he or she can be trained within 12 months to perform, meeting the claimant's income requirements.

53.     The LTD Plan's termination of Waldron's long-term disability benefits was arbitrary and capricious, an abuse of discretion, and in violation of the terms of The LTD Plan.

54.     An actual controversy has arisen and now exists between Waldron and The LTD Plan and MIT with respect to whether Waldron is entitled to long-term disability benefits under The LTD Plan.

55.     Waldron desires a judicial determination of his rights and a declaration as to which party's contention is correct, together with a declaration that The LTD Plan is obligated to provide long-term disability benefits under the terms of The LTD Plan, or the equivalent thereof, retroactive to the first day his benefits were terminated, until and unless such time that Waldron is no longer eligible for such benefits under the terms of The LTD Plan.

56.     A judicial determination of these issues is necessary and appropriate at this time under the circumstances described herein in order that the parties may ascertain their respective

16

rights and duties, avoid a multiplicity of actions between the parties and their privities, and promote judicial efficiency.

57.     As a proximate result of Defendants' wrongful conduct as alleged herein, Waldron found it necessary to obtain the services of counsel to obtain the benefits to which he is entitled under the terms of The LTD Plan.  Pursuant to 29 U.S.C. section 1132(g)(1), Waldron requests an award of attorney's fees and expenses from MIT and/or The LTD Plan as compensation for costs and legal fees incurred to pursue Waldron's rights under the terms of The LTD Plan.

**SECOND CLAIM FOR RELIEF**
**(Injunctive Relief and Declaratory Relief Regarding Retirement Benefits)**

58.     Waldron incorporates by reference Paragraphs 1 through 52 of this Complaint.

59.     Due to the termination of Waldron's LTD benefits, Waldron applied for and received early retirement benefits from MIT, which will result in a reduced monthly retirement benefit and provides for health and dental insurance for Waldron and his wife at a substantial cost.

60.     In Waldron's July 2, 2019, appeal, he requested that upon the granting of his LTD appeal, that his early retirement be retroactively rescinded and his status be returned to the status he had before his LTD benefits were terminated: not retired and receiving the benefits described in Exhibit "1," attached hereto.

61.     Equity and good conscience require that, upon reinstatement of Waldron's LTD benefits, as prayed for herein, declaratory and injunctive relief be granted so that Waldron's retirement plan status be returned to the same status he was in prior to the termination of

Waldron's LTD benefits and that the extra fees and costs be incurred for dental and medical insurance be refunded to him.

62.     Waldron desires a judicial determination of his rights and a declaration as to which party's contention is correct, together with a declaration that if LTD benefits are retroactively reinstated, the Basic Retirement Plan is obligated to restore Waldron's retirement status to the same status he enjoyed retroactive to the first day his LTD benefits were terminated.

63.     A judicial determination of these issues is necessary and appropriate at this time under the circumstances described herein in order that the parties may ascertain their respective rights and duties, avoid a multiplicity of actions between the parties and their privities, and promote judicial efficiency.

### THIRD CLAIM FOR RELIEF
**(For Penalties Against MIT for Failure to Produce Documents)**

64.     Waldron incorporates by reference Paragraphs 1 through 57 of this Complaint.

65.     29 U.S.C. Section 1024(b)(4) required MIT, as plan administrator upon written request of Waldron to provided Waldron with specified plan documents, including "other instruments under which the plan is established or operated."

66.     Waldron, through his counsel, made several written requests beginning April 1, 2019, for such governing plan documents from MIT.

67.     Despite said written requests MIT:

A.      Failed and refused to provide to Waldron the plan document applicable to Waldron's claim.

B.      Withheld from Waldron until August 8, 2019, Exhibit "6," hereto, which appears to be a document under which the LTD Plan is operated.

C.      Failed and refused to provide Waldron other instruments under which the

plan is operated, as generally described in the MIT-Prudential Administrative Services

Agreement, Exhibit "4," hereto despite written requests from Waldron's counsel.

68.      MIT acted in bad faith and actively concealed from Waldron these plan

documents and instruments under which The LTD Plan is operated in order to prevent Waldron

from fully knowing and understanding his rights under The LTD Plan or from effectively

appealing Prudential's March 27, 2019, letter terminating his LTD benefits.

69.      MIT, as plan administrator, is a fiduciary in its administration of The LTD Plan.

It knew or should have known that withholding such documents and instruments from Waldron

during the internal appeal process would be detrimental to Waldron and would deprive Waldron

of a full and fair review of the decision to terminate his LTD benefits.

70.      Waldron was prejudiced by MIT's bad faith failure and refusal to provide said

documents and instruments and its concealment of the terms and conditions under which The

LTD Plan is operated.

A.      As alleged herein, Waldron does not have the plan document or know all

of its terms.

B.      As alleged herein, MIT provided to Waldron different SPDs, neither of

which provide the information required by 29 C.F.R. §2520.102-3.

C.      As alleged herein, MIT provided to Waldron plan documents effective for

claims <u>after</u> January 1, 2000, and after July 1, 2019, representing that those documents or

provisions therein applied to Waldron's claim despite explicit, unambiguous provisions

in both documents stating that they do <u>not</u>.

19

D.     After a delay of 100 days and after Waldron submitted his first appeal,

Prudential provided Exhibit "6" hereto, representing that it applied to Waldron's claim.

71.     By virtue of the foregoing Waldron was denied knowledge and information: about

his rights and obligations under The LTD Plan; of the procedures he was required to follow to

obtain benefits; and of the standards and criteria MIT and Prudential utilized to evaluate and

make decisions regarding his claim for benefits.

72.     In acting as alleged herein, MIT breached its fiduciary duties to Waldron, violated

the provisions of 29 U.S.C. § 1024(b)(4), in bad faith and to Waldron's prejudice such that the

Court should award Waldron the maximum penalty of $110 per day per document for each day

MIT withheld and/or continues to withhold from Waldron the governing plan documents and/or

other instruments under which The LTD Plan is established or operated.

## FOURTH CLAIM FOR RELIEF
### (For Injunctive Relief Against MIT for Violation of U. S.C. section 1022)

73.     Waldron incorporates by reference Paragraphs 1 through 57 of this Complaint.

74.     Pursuant to U. S. C. Section 1022, a summary plan description ("SPD") shall be

written is a manner calculated to be understood by the average plan participant, and be

sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries

of their rights and obligations under the plan.   Pursuant to 29 C.F.R. §2520.102-3 an SPD must,

among other requirements: (a) accurately reflect the plan description: and (b) include the

procedure governing claims for benefits for reviewing denied claims and for redress of denied

claims, including procedures required under 29 U.S.C. Section 1133.

75.     As more fully alleged herein, no SPD regarding The LTD Plan provided by MIT

or Prudential to Waldron or known to Waldron complies with these requirements.

76.     MIT, as plan administrator, is a fiduciary obligated to comply with 29 U.S.C. Section 1022 and 29 C.F. R § 2520.102-3.

77.     MIT breached its fiduciary duties and legal obligations by failing to prepare and distribute to participating employees, including Waldron that an SPD that conforms to the requirements of the law.

WHEREFORE, Plaintiff prays judgment as follows:

1.     For declaratory judgment against MIT and The LTD Plan, requiring MIT and The LTD Plan to reinstate Waldron's disability benefits under the terms of The LTD Plan for the period to which he is entitled to such benefits, i.e., from April 1, 2019, with prejudgment interest on all unpaid benefits, until Plaintiff attains the age of 67 years or until it is determined that Plaintiff is no longer eligible for benefits under the terms of The LTD Plan and further requiring said parties to provide the cash equivalent of said benefits, together with tax equalization payments, in the event Waldron's retirement is not or cannot be rescinded, as prayed for herein.

2.     That Waldron's retirement status be retroactively rescinded upon reinstatement of LTD benefits that his retirement status be returned to the same status he was in as of March 21, 2019, before his LTD benefits were terminated and that he be reimbursed for his health and dental insurance costs incurred because of MIT and Prudential's wrongful termination of his LTD benefits.

3.     That MIT issue and provide to Waldron an SPD that complies with the requirements of law.

4.     For attorney's fees pursuant to statute.

5.     For costs of suit incurred.

6.      For such other and further relief as the Court deems just and proper.


Dated: January 15, 2020                    /s/ *M. Katherine Sullivan*_____
                                           M. Katherine Sullivan
                                           BBO No. 649239
                                           Law Office of Katherine Sullivan, LLC
                                           945 Concord Street
                                           Framingham, MA  01701
                                           (508) 620-5387
                                           kate@sullivandisabilitylaw.com
                                           Attorney for Plaintiff
                                           JEFFREY WALDRON