UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFFREY WALDRON,<br>    Plaintiff,<br><br>v.<br><br>MASSACHUSETTS INSTITUTE OF<br>TECHNOLOGY et al,<br>    Defendants. | )<br>)<br>)<br>)    Civil Action No. 20-cv-30006-MGM<br>)<br>)<br>)<br>) |

<u>MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO: (1)
AUGMENT THE RECORD; AND (2) TO CONDUCT DISCOVERY</u>
(Dkt. No. 23)

ROBERTSON, U.S.M.J.

I.     INTRODUCTION

This is an action brought by plaintiff Jeffrey Waldron ("Plaintiff") pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, to recover benefits under the Massachusetts Institute of Technology ("MIT") Long Term Disability Plan ("LTD Plan") and the MIT Basic Retirement Plan.[1] Plaintiff was awarded benefits under the LTD Plan effective February 17, 1999. On or around March 28, 2019, MIT notified Plaintiff that Prudential Life Insurance Company of America ("Prudential"), MIT's LTD Plan administrator, had determined that Plaintiff was not entitled to disability benefits, that MIT had accepted Prudential's determination, and that Plaintiff's long-term disability and related benefits, including contributions to the MIT Basic Retirement Plan, would terminate effective April 1, 2019. After completion of a two-step internal appeals process, which was unsuccessful, Plaintiff filed this action on January 15, 2020.

---

[1] Background facts in this memorandum and order are drawn principally from the complaint (Dkt. No. 1).

1

Before the court is Plaintiff's Motion to: (1) Augment the Record; and (2) to Conduct Discovery (Dkt. No. 23), which is opposed by the defendants (referred to collectively as "MIT") (Dkt. No. 28). In connection with the September 10, 2020 hearing on Plaintiff's motion, MIT agreed to respond to some of Plaintiff's requests for supplemental information and the applicable standard of review. Areas of agreement between the parties are listed below. As to the documents or areas of discovery that remain in contention between the parties, the court GRANTS Plaintiff's motion in part and DENIES it in part.

II.  RELEVANT BACKGROUND

Plaintiff applied for and was granted benefits under the LTD Plan effective February 17, 1999. BY the terms of the LTD Plan, Waldron received a monthly disability benefit; payment of premiums for health and dental insurance; supplemental life insurance coverage; continued contributions to his MIT Basic Retirement Plan; and continued contributions to his supplemental 401(k) retirement plan (Compl. ¶ 13).

In 2009, Prudential became the claims administrator for MIT. MIT kept the responsibility for administering Plaintiff's claim and a handful of other claims. In 2012, MIT sent a copy of Plaintiff's claim file to Prudential. In September 2016, Prudential took over administration of Plaintiff's LTD claim (Compl. ¶ 15). In January 2017, Prudential initiated a review of Plaintiff's claim; Prudential conducted additional claim reviews in July, September, and October 2017; November 2018; and January and February 2019 (Compl. ¶ 17). In March 2019, "Prudential's Dr. Kevin Hayes performed a 'file review' of Prudential's records regarding [Plaintiff's] claim" (Compl. ¶ 18). In a letter dated March 27, 2019, after soliciting input from Plaintiff's treating physicians, Prudential terminated Plaintiff's benefits effective April 1, 2019. The letter informed Plaintiff of his right to appeal the decision (Compl. ¶ 20). On or around

August 28, 2019, MIT accepted Prudential's recommendation and denied Plaintiff's appeal from the termination of his LTD benefits (Compl. ¶¶ 40-43). MIT nonetheless invited Plaintiff to submit a second appeal, which he did (Compl. ¶ 44). On or around November 8, 2019, MIT adopted Prudential's recommendation and denied Plaintiff's second appeal of the termination of his long-term disability benefits (Compl. ¶ 46).

Plaintiff had retained counsel, who requested copies of the governing plan documents, Plaintiff's claim file, and other documents (Compl. ¶ 24). In response, MIT provided the MIT LTD plan as amended and restated effective January 1, 2000; a summary plan description ("SPD") dated July 1, 2009; MIT's Administrative Services Agreement with Prudential; the LTD SPD effective July 1, 1998; Prudential's Group Disability Memorandum-2015; and the LTD Plan that was effective as of July 1, 2019 (Compl. ¶ 26). Through counsel, MIT has acknowledged that, after a good faith search, it has not been able to find a copy of the LTD Plan that was in effect in March 1999 when Plaintiff applied for and was awarded benefits, nor has MIT been able to provide a complete copy of Plaintiff's historical claim file (Compl. ¶¶ 35-39).

   III.   DISCUSSION

   A. Legal Framework

MIT does not contest that the standard of review in this ERISA case is de novo (Dkt. No. 28 at 12), meaning that "the district court considers the issues de novo and 'may weigh the facts, resolve conflicts in evidence, and draw reasonable inferences.'" *Doe v. Harvard Pilgrim Health Care, Inc.*, 974 F.3d 69, 72 (1st Cir. 2020) ("*HPHC II*") (quoting *Stephanie C. v. Blue Cross Blue Shield of Mass. HMO Blue, Inc.*, 852 F.3d 105, 111 (1st Cir. 2017)).

"ERISA benefit-denial cases typically are adjudicated on the record compiled before the plan administrator. Because full-blown discovery would reconfigure that record and distort

3

judicial review, courts have permitted only modest, specifically targeted discovery in such cases" and have severely limited augmentation of the administrative record. *Denmark v. Liberty Life Assurance Co. of Boston*, 566 F.3d 1, 10 (1st Cir. 2009). The rule "about admissibility of evidence outside the administrative record applies even when the denial of benefits is subject to de novo review." *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 519 (1st Cir. 2005). In 2000, the Department of Labor promulgated regulations requiring that plan participants whose claims are denied be given access to all relevant documents. *Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 123 (1st Cir. 2004) (citing 29 C.F.R. § 2560.503-1(h)(2)(iii)). These "new regulations were intended to clarify the preexisting ones and … the preexisting regulations already contemplated disclosure of [relevant statements of policy or guidance}." *Id.* When, as here, the plan at issue provides disability benefits, "'the claimant should receive any information demonstrating that, in making the adverse benefit determination, the plan complied with its own process for ensuring appropriate decisionmaking and consistency.'" *Id.* (quoting 65 Fed. Reg. 70,246, 70,252 (Nov. 21, 2000)). Depending on the facts of the case, internal guidelines or manuals containing ERISA interpretations that are relied on by a claims administrator in connection with a decision to deny or terminate disability benefits may appropriately be treated by a court as part of the administrative record. *Id.* at 123-24. Further, an administrative record should include documents submitted as part of an appeals process such as the appeals process conducted in this case. *Doe v. Harvard Pilgrim Health Care, Inc.*, 904 F.3d 1, 9 (1st Cir. 2018) ("*HPHC I*").

B. <u>Agreements About Discovery and Additions to the Record</u>

- The parties agree that documents submitted by the parties in connection with Plaintiff's first and second appeals from the termination of his disability benefits, such as, for

example, test results, supplemental medical records, and IME reports, are in the administrative record proposed by MIT. *See HPHC I*, 904 F.3d at 9.

- MIT agreed at the hearing to respond to Plaintiff's first document production request, which seeks production of a copy of the LTD Plan that was in effect when Plaintiff applied for and was awarded benefits. MIT has acknowledged that, after a good faith and diligent search, it cannot locate the document. It is understood that it will so indicate in its response to this document production request.
- MIT has agreed to answer the interrogatories attached as Exhibit A to Plaintiff's motion (Dkt. No. 28 at 12).
- MIT agreed during the hearing that remuneration statements showing the amount of Plaintiff's monthly benefit should be added to the administrative record.

MIT further represents, and Plaintiff does not dispute, that the proposed administrative record includes certain LTD Plan documents, including the 1998 applicable SPD and the July 2019 LTD Plan in effect when MIT issued its decisions in on Plaintiff's appeals, relevant group disability memoranda, including a document that contains the definition of disability applied in Prudential's review of Plaintiff's claim and his two appeals, and the administrative services agreement between Prudential and MIT (Dkt. No. 28 at 4).

C. The Parties Remaining Disputes

Plaintiff's discovery requests for additions to the administrative record were clarified and narrowed at the hearing. At this time, Plaintiff seeks to discover and, presumably, add to the administrative record the following documents: (1) correspondence between Plaintiff and Elliott Richman, an MIT human resources manager and the MIT decisionmaker on Plaintiff's claim and between Mr. Richman and Plaintiff's attorney; (2) documents concerning MIT's decision in

5

2009 to retain administration of 29 claims, including Plaintiff's claim, and its decision in or around 2016 to turn over to Prudential the administration of as many of these claims as remained active; and (3) internal Prudential guidance or standards for claim administration, in particular guidance or standards addressing vocational capabilities and position descriptions. The court addresses each of these categories of documents in turn.

    1.  Mr. Richman's Correspondence

Plaintiff complains that the proposed administrative record is Prudential's claim file, not MIT's claim file and he contends that Mr. Richman's correspondence with Plaintiff and with Plaintiff's attorney should be included (Dkt. No. 23-2 at 5-6). Plaintiff does not dispute that Prudential conducted the claim review and recommended the termination of Plaintiff's LTD Plan benefits, that Prudential conducted the further claim review associated with Plaintiff's two appeals and recommended their denial, and that MIT adopted Prudential's recommendations without further review or reference to other documents or standards. Under *Orndorf*, the focus of the court's review in this case is whether the decision to terminate Plaintiff's benefits was justified on the record before the decisionmaker, which, in the circumstances of this case, is the record that was before Prudential because MIT adopted Prudential's recommendations without further review or consideration of information or guidance. *Orndorf*, 404 F.3d at 519-520. To the extent Plaintiff challenges the procedure used to reach the decisions, those challenges will be evaluated by reference to documents already in the record, including the 2019 version of the LTD Plan and the 1998 SPD. While the lack of the applicable LTD Plan document is an obvious and acknowledged gap, the existing record adequately details the procedures followed by Prudential and adopted by MIT. *See Denmark*, 566 F.3d at 10. Plaintiff has not shown a "very good reason" to include correspondence in the administrative record that was not before

Prudential when it reviewed Plaintiff's claim and made its recommendations to MIT. *Orndorf*, 404 F.3d at 519.

### 2. MIT's Decision to Refer Plaintiff's Claim to Prudential for Administration

When MIT enlisted Prudential to administer the LTD Plan, it retained responsibility for Plaintiff's claim. There are cryptic notes in Prudential's claim file concerning the decision to transfer Plaintiff's claim – and a handful of other claims – to Prudential for administration (Dkt. No. 23-2 at 6). Plaintiff seeks copies of documents, if any, related to this decision and their addition to the administrative record. This request for discovery is far afield from the question this court will decide. "[W]here review is *de novo* as … has [been] determined here …, the issue is simply whether the court believes there is sufficient evidence to support a finding of disability." *Estate of Jajuga v. Prudential Ins. Co. of Am.*, 742 F. Supp. 2d 176, 179 (D. Mass. 2010). Because discovery concerning MIT's possible motive for transferring responsibility for administering Plaintiff's claim to Prudential is not relevant to the question of whether or not the substantive evidence in the administrative record supports a finding of disability, Plaintiff is not entitled to such discovery, nor would supplementation of the record on this topic be appropriate under controlling caselaw. *See, e.g., HPHC II*, 974 F.3d at 75 (there is a "strong presumption" against supplementing the administrative record in an ERISA case) (citing *Liston*, 330 F.3d at 23).

### 3. Prudential's Claim Standards, Manuals, and/or Guidelines

Plaintiff contends that Prudential's claim standards, manuals, and/or guidelines should be included in the administrative record because these were the standards employed by Prudential in reaching its decisions to recommend termination of Plaintiff's LTD benefits. There is some merit to Plaintiff's argument inasmuch as MIT accepted Prudential's recommendations to

terminate Plaintiff's benefits and deny his appeals without conducting any independent review of the claim or the appeals.  At the hearing, responding to the point that, because MIT did not conduct an independent review of Plaintiff's claim or his appeals, MIT had adopted Prudential's procedures, MIT argued that the administrative record already contains the plan documents, standards, and guidance that Prudential applied in its consideration of Plaintiff's claim.  For his part, Plaintiff acknowledged that, where MIT has now agreed that Plaintiff is entitled to de novo review and he is not required to show that MIT's decision was arbitrary and capricious when tested against the definition of disability applied by Prudential and MIT and applicable claim standards, the claim standards, manuals, and guidelines relied on by Prudential are less relevant than they would be if the standard of review was arbitrary and capricious.  *Cf. Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19, 25 n.5 (1st Cir. 2003) ("The administrator's obligation to avoid arbitrary and capricious behavior extends to procedure as well as substance … .") (citing *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981 (7th Cir. 1999)).

The parties have not given the court much information about the basis of Prudential's recommendations concerning Plaintiff's claim, nor does the court have much information about Prudential's claim evaluation process.  It is difficult, therefore, to determine whether there are claim standards, manuals or guidance beyond those already in the administrative record that might be sufficiently relevant to warrant their addition to the record.  While MIT has admitted that it cannot locate the applicable LTD Plan document and Plaintiff complains about MIT's delay in notifying him about this gap in documentation, there does not seem to be a serious claim of bias or procedural irregularity directed at the claimant.  *See Orndorf*, 404 F.3d at 520 ("evidence outside the judicial record might be relevant to a claim of personal bias by a plan

administrator or of prejudicial procedural irregularity in the ERISA administrative review procedure"). It appears that MIT has identified the LTD Plan documents, definition of disability, and claim administration standards on which Prudential relied in administering Plaintiff's claim and that those documents are included in the record. There is nothing before the court to suggest that MIT or Prudential has excluded a document from the administrative record that would clarify the definition of disability in the missing LTD Plan. On balance, with the exception discussed below, the court concludes that Plaintiff has not justified the discovery he seeks or the addition of further Prudential (or MIT) claim standards, manuals, or guidelines to the existing administrative record. *See, e.g., HPHC II*, 974 F.3d at 75.

Plaintiff indicated at the hearing that he is particularly interested in discovery of Prudential's standards or guidelines governing vocational assessments and the in the addition of such documents to the administrative record. On this narrow point, the court agrees that discovery and supplementation is appropriate to the extent relevant documents exist. In *Orndorf*, the First Circuit held that, in certain circumstances, it was appropriate to supplement the administrative record with evidence relevant to explain a key item, such as the duties or demands of a claimant's position. *Orndorf*, 404 F.3d at 520. It is possible that the court's decision in this case will turn on Prudential's assessment of Plaintiff's vocational capabilities. According to Plaintiff, the administrative record does not include standards or guidelines that Prudential's claim administrators rely on to assess a claimant's ability to work or the duties and demands of positions that a claimant might perform. In the court's view, "vocational resource material that was submitted, considered, or generated[, or consulted] in the course of making the benefit determination, regardless of whether the material was relied upon as a basis for a claims decision [in Plaintiff's case] is … 'relevant' within the meaning of the [DOL] regulations" and should be

9

included in the administrative record.  *Prokhorova v. Unum Life Ins. Co. of Am.*, Civil Action No. 17-30064-MGM, 2018 WL 1913801, at *5 (D. Mass. Apr. 23, 2018).  If there are no vocational resource materials that were submitted, considered, generated, or consulted in connection with Prudential's review of Plaintiff's claim, the defendants should so indicate to Plaintiff.  The defendants have asked that, if the court allows discovery of Prudential's claim standards and guidelines, such documents should be produced subject to a protective order.  To the extent there are vocational resource materials that are not part of the administrative record and that were generated or consulted during Prudential's review of Plaintiff's claim, that material should be held confidential by the parties, who may stipulate to the terms of a suitable protective order and file it with the court.

IV.    CONCLUSION

For the forgoing reasons, Plaintiff's motion to augment the administrative record is GRANTED insofar as the defendants are directed to produce and include in the administrative record vocational resource material that was submitted, considered, generated, or consulted in the course of making the benefit determinations in Plaintiff's case, regardless of whether the material was relied upon as a basis for a claims decision.  Plaintiff's motion is otherwise DENIED.

It is so ordered.

Dated:  December 2, 2020                                Katherine A. Robertson
                                                        KATHERINE A. ROBERTSON
                                                        U.S. MAGISTRATE JUDGE